UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| RICKY WOOTEN, | ) |
| Petitioner, | ) No. 6:11-CV-00190-KSF |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| KAREN F. HOGSTEN, WARDEN, | ) **AND ORDER** |
| Respondent. | ) |

\*\* \*\* \*\* \*\* \*\*

Ricky Wooten is an inmate confined in the Federal Correctional Institution in Manchester, Kentucky. Wooten, proceeding without an attorney, has petitioned the Court pursuant to 28 U.S.C. § 2241 to issue a writ of habeas corpus. Wooten contends that he was wrongfully convicted of violating prison rules and that the resulting loss of good-time credits was improper. [R. 1]

The Court reviews habeas petitions filed under Section 2241 to determine whether the petition and its exhibits establish viable grounds for relief. 28 U.S.C. § 2243; Rule 4, Rules Governing 28 U.S.C. § 2254 Cases (applicable to Section 2241 petitions under Rule 1(b)); *Patton v. Fenton,* 491 F. Supp. 156, 158-59 (M.D. Pa.1979). If it appears from the face of the § 2241 petition that relief is not warranted, the Court may summarily deny the petition. *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970). The Court has reviewed the petition, determined that Wooten is not entitled to relief, and will therefore deny the petition.

**BACKGROUND**

On August 5, 2008, Wooten was confined in FCI-Morgantown. On that date, Special Investigations Services Lieutenant R. Trybus, acting on information obtained from a confirmed

confidential informant, issued an Incident Report charging Wooten with "Possession, Manufacture, or Introduction of a Hazardous Tool" in violation of the Federal Bureau of Prisons ("BOP") Prohibited Acts Code ("PAC") 108. *See* Incident Report [R. 21-1,p. 1] Trybus stated that the confidential informant informed him that Wooten kept a cell phone hidden in the ceiling outside of the counselor's office; that Wooten retrieved the cell phone every morning between 6:15 a.m. and 7:00 a.m; and that the confidential informant had witnessed Wooten remove the cell phone from the ceiling. [*Id.*] When Alexander Unit Officer Berg searched the area, he discovered a homemade green bag containing a fully charged black "Virgin Moble [sic] cell phone," a charger, and a set of earphones which fit the cell phone. [*Id.*]

On September 10, 2008, a disciplinary hearing was held on the charge, and Wooten testified on his own behalf. Wooten testified that he had not called his girlfriend or family members for several months; everyone in the unit had access to the area where the cell phone was discovered; Lieutenant Shaw was harassing him; and he did not know why another inmate would make a false statement against him. *See* Discipline Hearing Officer ("DHO") Report [R. 21-1, p. 2, § III (B)]. In addition to considering Wooten's testimony, the DHO reviewed (1) the Incident Report; (2) the supporting memorandum by officer Berg; (3) confidential informant information provided by SIS Trybus; (4) a memorandum from officer Hilberry; and (5) an analysis of Wooten's use of the prison's telephone system. [*Id.*, p. 3, § III (D)]. The DHO determined that the confidential informant's information identifying the location of the cell phone, and Wooten's possession of it, was reliable. [*Id.*, § III (E)].

The DHO found Wooten guilty of possessing the cell phone. [*Id.*, § V]. The DHO stated that he considered a cellular phone to be a hazardous tool because it is ". . . extremely useful in effecting

an escape or other absence from an open institution or coordinating the introduction of illegal substances, e.g., drugs, into the facility. Using cellular telephones in concert allows inmates to coordinate the commission of criminal, sexual or other violent acts within the institution. Therefore, the DHO finds a cellular telephone is a hazardous tool because of its threat to institution security, maintaining good order and the personal safety of both inmates and staff." [*Id.*, pp. 3-4]. The DHO restricted Wooten's telephone privileges for 12 months; disallowed 40 days of good time credits; and ordered him to serve 30 days in disciplinary segregation, suspended pending his completion of 180 days without further incident. [*Id.*, p. 5, § VI]. On appeal, the BOP Central Office affirmed the conviction and sanctions, finding that the DHO's findings were supported by some evidence in the record and that the DHO imposed the proper sanctions. *See* Response [R 21-1, p. 8].

In his petition,[1] Wooten alleges that his disciplinary conviction and resulting loss of good time credits violates his right to due process of law guaranteed by the Fifth Amendment of the United States Constitution. Wooten claims that because the BOP did not specifically define a cell phone as a "hazardous tool" at the time he was charged with the disciplinary infraction, he was incorrectly charged with and convicted of committing a Code 108 offense for "Possession of a Hazardous Tool," which is a "Greatest Severity" level prohibited act. Wooten argues that, if anything, he should have been charged with violating Code 305, "Possession of Any Thing not Authorized for Retention or Receipt by the Inmate," which is a "Moderate Severity" level prohibited

---

[1] Wooten filed his petition on September 9, 2010, in federal court in New Jersey. [R. 1] But because he was not confined in that district when he filed the petition, that court transferred the proceeding to the Eastern District of North Carolina on February 28, 2011. [R. 7] The Bureau of Prisons later transferred Wooten to FCI-Manchester, and on July 8, 2011, the federal court in North Carolina again transferred the proceeding to this district in the "interests of justice" pursuant to 28 U.S.C. § 1406. [R. 11]

3

act. Wooten alleges this charge "is usually resolved without loss of good time credits, [and that] Greatest Severity PAC requires the loss of good time credits." [R. 1, p. 15]

The BOP's current regulations specifically define a "portable telephone" as a "hazardous tool" under Code 108. *See* 28 C.F.R. § 541.3, Table 1, Greatest Severity Level Prohibited Acts, No. 108; BOP Program Statement 5270.09 (August 2011). Wooten notes that, when he committed his offense in 2008, a cell phone was not specifically listed as a "hazardous tool" under Code 108. Wooten contends that the prior version of the regulation, 28 C.F.R. § 541.3, Table 1, was invalid because the BOP did not make that decision pursuant to the Administrative Procedure Act's ("APA") notice-and-comment procedures, set forth at 5 U.S.C. § 553.

Finally, Wooten claims that the BOP violated his right to equal protection by reducing a disciplinary charge against a BOP inmate, confined in another BOP institution, to a Code 305 violation based on the same conduct with which Wooten was charged, citing *Neagle v. Grondolsky*, No. 09-2016, 2010 WL 2546021 (D. N.J. June 18, 2010). Wooten seeks the expungement of the disciplinary report and the reinstatement of his forfeited good time credits.

## DISCUSSION

First, Wooten's petition must be denied because he did not administratively exhaust any of the claims he asserts in it. In response to the Court's July 19, 2011, Order directing him to provide documents establishing that he had administratively exhausted his claims, Wooten provided a copy of the Form BP-231 appeal to the Central Office and the BOP's response to it. [R. 21-1, pp. 8-9]. When he challenged the DHO sanction, Wooten argued only that the witnesses the DHO relied upon were not credible and that the failure to provide the identity of the confidential informant prevented him from defending against the charge. [R. 21-1 at 9] Wooten made no claim that he should have

4

been charged with violating Code 305 instead of Code 108, or that charging him with violating Code 108 violated either the Fifth Amendment or the APA.  Prisoners must administratively exhaust their claims prior to filing a habeas corpus petition under 28 U.S.C. § 2241.  *Wesley v. Lamanna*, 27 F. App'x. 438, 2001 WL 1450759 (6th Cir. 2001).  A prisoner has not satisfied this requirement where the legal basis for relief sought in a habeas proceeding is so unrelated to the one presented in prison grievances that officials cannot be said to have been given notice of the claim sufficient to be afforded the first opportunity to correct the error.  *Pruitt v. Holland*, 2011 WL 13653, at *4-5 (E.D. Ky. 2011) (collecting cases); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2010).

Even had Wooten exhausted his claims, they would fail as a matter of fact and law.  Wooten first claims that his disciplinary conviction violates his due process rights.  Prisoners who face the loss of good time credits in prison disciplinary proceedings are entitled to the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  Since Wooten faced the loss of good time credits as a result of the disciplinary charge, he was entitled to: (1) written notice of the charges against him at least 24 hours before the hearing; (2) a written statement by the fact-finder as to the evidence relied upon and the reason for the disciplinary action; and (3) the opportunity to call witnesses and present documentary evidence in his defense.  *Wolff*, 418 U.S. at 563-66.  In addition, there must be "some evidence" to support Wooten's disciplinary conviction.  *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454 (1983).

In his petition, Wooten does not allege that he was deprived of any of the procedural protections he was entitled to under *Wolff*, or that on the date in question he was not in possession of a cell phone.  Instead, he argues that at the time he was found guilty of the violation, a cell phone

qualified only as "contraband" under Code 305, not as a "hazardous tool" under Code 108, and that he should have been charged accordingly. Wooten states that although the BOP had proposed amending its regulations to expressly provide that possessing a cell phone constituted a Code 108 violation, the regulations did not do so when he committed his offense. [R. 1, p. 16].

Several courts, including this one, have specifically rejected this claim. The Third Circuit explained that "the absence of the term 'cell phone' in the text of [the prior version of] Code 108 did not prevent the BOP from interpreting that provision to include this item." *Hicks v. Yost*, 377 F. App'x 223, 224–25 (3rd Cir. 2010); *see also McGill v. Martinez*, 348 F. App'x 718, 721 (3rd Cir. 2009) (Code 108 prohibited the possession of a cell phone because it posed a serious impact on the institution's security). Even before the BOP amended its regulations to specifically so provide, courts in this circuit consistently held that the BOP could properly determine that a cell phone constitutes a "hazardous tool" under Code 108.[2] *See Booth v. Patton*, No. 08-2-HRW, 2009 WL 1636391, at *4 (E. D. Ky. June 10, 2009) (*citing Barnes v. Warden, FCI Texarcana*, 2008 WL 3481942, at *3 (E.D. Tex. August 7, 2008)); *Vasquez v. Shartle*, No. 4:10-CV-2511, 2011 WL 1004934, at *5 (N.D. Ohio Mar. 18, 2011); *Curry v. Zych*, No. 09-CV-10979, 2010 WL 864486, at *4 (E.D. Mich. March 9, 2010).

---

[2] In *Booth*, this Court noted that BOP Program Statement 5270.07 defined a Code 108 offense as follows:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g. hack-saw blade).

*Booth*, 2009 WL 1636391, at *4.

It is not constitutionally necessary for the BOP to include every kind of implement that might fall into the category of "hazardous tool." *Myrieckes v. Caraway*, No. No. L–11–917, 2012 WL 527585, at *6 (D. Md. February 16, 2012). A person of ordinary intelligence would, or should, understand that a cell phone qualifies as a hazardous tool as defined under either the BOP's prior or current applicable regulation because a cell phone can be used "to facilitate an escape or coordinate harm to others." *Id*. In denying a habeas petition raising similar claims challenging a charge under Code 108, another district court explained that:

> a cellular telephone could constitute a hazardous tool as it would permit inmates, whose telephone conversations are normally monitored, to communicate with individuals outside the prison without being monitored. Obviously it would be easier to plan an escape or attempt to have contraband brought into the institution if an inmate could communicate with people outside the institution without fear of being monitored.

*Barnes*, 2008 WL 3481942, at *8.

"[A]n agency's interpretation of its own regulations is 'controlling ... unless it is plainly erroneous or inconsistent with the regulation.'" *Chong v. Dist. Dir. INS*, 264 F.3d 378, 389 (3rd Cir. 2001) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). It was unnecessary for the BOP to have detailed every item that could be used to breach security, or to have given advance notice of all conduct that was sanctioned under Code 108. In this case, the DHO's decision to treat a cell phone as a hazardous tool in August 2008 was not plainly erroneous because inmates could have at that time, as they can now, use a cell phone and related components to circumvent the inmate phone monitoring system, keep informed of special counts and staff locations, and possibly escape, thereby threatening the security of the institution and the safety of other inmates and staff. *See Robinson v. Warden FCI Fort Dix*, 250 F. App'x. 462, 464 (3rd Cir. 2007) (upholding a

7

prisoner's conviction for possession of a cell phone in 2005 under Code 108). As these cases amply demonstrate, because a cell phone can be used to breach security in the hands of an inmate, it can constitute a "hazardous tool" under Code 108.

Wooten next claims that the BOP's internal rule including a cell phone as a "hazardous tool" under the prior version of Code 108 and BOP Statement 5270.07 violated the APA because the decision was not promulgated pursuant to the APA's notice-and-comment procedures.

The APA provides that before an agency may adopt a "rule" (commonly referred to as a "legislative rule" or "substantive rule"), it must give notice through publication in the Federal Register and provide the public the opportunity to comment prior to its adoption. 5 U.S.C. § 553(b), (c). Rules that are issued in violation of the APA are invalid.

The APA defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" *Id*. § 551(4). On the other hand, "interpretive" rules only interpret existing language in properly issued regulations. If the agency is not adding or amending language to the regulation, the rules are interpretive. Interpretive, or "procedural," rules do not themselves shift the rights or interests of the parties, although they may change the way in which parties present themselves to the agency. Interpretive or procedural rules and statements of policy are exempted from the notice-and-comment requirement. *See*, *e.g.*, *Reno v. Koray*, 515 U.S. 50, 61(1995); *Royal v. Tombone*, 141 F.3d 596, 600 (5th Cir.1998).

Wooten's APA claim fails because the BOP's decision to classify cell phones as "hazardous tools" under BOP Program Statement 5270.07 - prior to the subsequent definition of cell phones as

8

"hazardous tools" in Code 108 - was done pursuant to its interpretative rule-making power and as such, the classification was not subject to the notice-and-comment requirement of the APA. *Hall v. Zickefoose*, 448 F. App'x 184, 186 (3rd Cir. 2011); *Evans v. Martin*, No. 1:11-cv-00682, 2012 WL 610978, at *2 (E.D. Texas, February 24, 2012). Contrary to Wooten's assertion, the later explicit inclusion of cell phones in Code 108's list of "hazardous tools" does not support his argument that the rules, as they existed in August 2008, failed to include cell phones as a hazardous tool. *See Myriekes*, 2012 WL 527585, at *7 (D. Md. February 16, 2012)

Finally, Wooten's equal protection claim must be dismissed. The Equal Protection Clause requires that all people similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff alleging an equal protection claim must allege that he was treated differently from other similarly situated persons and that the different treatment was not rationally related to a legitimate government interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Wooten alleges that he was treated differently from other similarly situated inmates based on the result reached in *Neagle v. Grondolsky*, No, 09-2016, 2010 WL 2546021 (D.N.J. June 18, 2010). In *Neagle*, the prisoner filed a Section 2241 petition challenging the loss of 41 days of good time credits for possessing a cell phone in violation of Code 108 which carried stronger legal consequences than a Code 305 violation. *Id*. at *3. The BOP eventually reduced Neagle's infraction to a Code 305 violation. *Id*. *Neagle* does not assist Wooten because: (1) the record does not indicate why the BOP chose to expunge the violation for that specific prisoner, *see Neagle*, 2010 WL 2546021, at *2, and (2) the district court dismissed the petition on the merits, finding that the

9

BOP did not violate the prisoner's federal rights by originally sanctioning him for a Code 108 violation. *Id*.

Further, Wooten does not allege that he is a member of a protected class, as required for an equal protection claim, nor could he because prisoners are not a suspect class under equal protection principles. *Carnes v. Engler*, 76 F. App'x. 79, 81 (6th Cir. 2003); *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000); *see also Swant v. Hemingway*, 23 F. App'x. 383, 384 (6th Cir. 2001). Merely claiming that other prisoners received less severe punishment for the same violation, *i.e.*, possession of a weapon, does not create an equal protection claim. *See Millard v. Hufford*, 2011 WL 681091 (3d Cir. Feb. 28, 2011). Accordingly, Wooten's equal protection claim fails.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Ricky Wooten's 28 U.S.C. § 2241 petition for writ of habeas corpus [R. 1] is **DENIED**; and

(2) This action will be **DISMISSED**, *sua sponte*, from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

This May 7, 2012.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**